## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PHILIP RICHARDSON, 8451 W. Emile Zola Ave., Peoria, Ariz. 85381; )

SCOTT LOUGHEAD, 814 E. Manor Drive, Chandler, Ariz. 85225; )    **COMPLAINT**

TERESA HERMINIA GIRAL, 5813 MacArthur Blvd., N.W., Washington D.C. 20016; )

YOON CASA LEBRATO, INC. , 1733 Columbia Rd., N.W., Washington D.C. 20009; )

CAROLYN GAROFOLO, 1798 W. 80th St., Hialeah, Fla. 33014; )

HOLLYWOOD DISCOUNT PHARMACY, INC. d/b/a HOLLYWOOD DISCOUNT PHARMACY, 1150 N. 35th Ave., Hollywood, Fla. 33021; )

CANDACE TODD, 24601 251st St., McLouth, Kan. 66051; )

STEVE RIDLON, 300 Ridge Rd., Wales, Me. 04280; )

ANTHONY BASCOMB, 17750 Sumner, Redford, Mich. 48240; )

COMMUNITY MILLS, INC., 313 Railroad St., Cassopolis, Mich. 49031; )

BIG VALLEY MILLING, INC., 4090 73rd Ave., S.W., Montevideo, Minn. 56565; )

DENISE DeNARDI, 2530 Haverton Circle, Mendota Heights, Minn. 55120; )

CHRIS JOHNSON, 2118 Central Ave., S.E., #151, Albuquerque, N.M. 87106; )

MICHAEL HENNINGSON, 23 Kelly Lynn Dr., Sandia Park, N.M. 87047; )

DRUG MART PHARMACY CORP., 4914 New Utrecht Ave., Brooklyn, N.Y. 11219; )

WILLIAM G. SCANLAN, 18 East Bayberry, Glenmont, )

N.Y. 12207;                                                                )
                                                                           )
MICHAEL ARMSTRONG, 20007 Ralph Knox Rd., Davidson,                         )
   N.C. 28036;                                               )
                                                                           )
MERRILL FOWLER, 19201 Brookgreen Garden Pl., Cornelius,                    )
   N.C. 28031;                                               )
                                                                           )
RITA DISRUD O'NEILL, 1623 Billings Dr., Bismarck,                          )
   N.D. 58504;                                               )
                                                                           )
KIRK CHAFFEE, 12435 Eden Road, Whitewood, S.D. 57793;                      )
                                                                           )
JABO'S PHARMACY, INC., 6020 East Broadway, Newport,                        )
   Tenn. 37821;                                              )
                                                                           )
ANILE PHARMACY, INC., 2413 Pennsylvania Ave. # 2,                          )
   Weirton, W.Va. 26062;                                     )
                                                                           )
GARY E. ARCHER, c/o WVEA, 1558 Quarrier St., Charleston,                   )
   W.Va. 25311;                                              )
                                                                           )
GENE LLOYD, 295 First St., Prairie du Sac, Wis. 53578,                     )
   successor in interest to J&R VENTURES, INC., N1118 Golf    )
   Rd., Prairie du Sac, Wis. 53578;                          )
                                                                           )
PAUL FOWLER, 6170 U.S. Highway 45 South, Oshkosh, Wis.                     )
   54902; and                                                )
                                                                           )
JAY BASS, 3192 Brooks Road, Oshkosh, Wis. 54904,                           )
                                                                           )
on behalf of themselves and all others similarly situated in the          )
District of Columbia, Arizona, Florida, Kansas, Maine,                     )
Michigan, Minnesota, New Mexico, New York, North Carolina,                 )
North Dakota, South Dakota, Tennessee, West Virginia, and                 )
Wisconsin,                                                                 )
                                                                           )
   – and –                                                  )
                                                                           )
THE DISTRICT OF COLUMBIA, by its Attorney General                         )
   PETER J. NICKLES; Public Advocacy Section, Office of the   )
   Attorney General, 441 Fourth St., N.W., Suite 600S,        )
   Washington, D.C. 20001;                                   )
                                                                           )
THE STATE OF ARIZONA, by its Attorney General TERRY                       )
   GODDARD; Antitrust Unit, Office of the Attorney General,   )
   1275 W. Washington St., Phoenix, Ariz. 85007;              )

THE STATE OF FLORIDA, by its Attorney General BILL )
   McCOLLUM; Antitrust Division, Office of Attorney General, )
   The Capitol, PL-01, Tallahassee, Fla. 32399; )
   )
THE STATE OF HAWAII, by its Attorney General MARK J. )
   BENNETT; Commerce and Economic Development Division, )
   Department of the Attorney General, 425 Queen St., Honolulu, )
   Hawaii 96813; )
   )
THE STATE OF IDAHO, by its Attorney General LAWRENCE )
   G. WASDEN; Consumer Protection Division, Office of the )
   Attorney General, 954 W. Jefferson St., P.O. Box 83720, )
   Boise, Idaho 83720; )
   )
THE STATE OF ILLINOIS, by its Attorney General LISA )
   MADIGAN; Antitrust Bureau, Office of the Attorney General, )
   James R. Thompson Center, 100 W. Randolph St., Chicago, )
   Ill. 60601; )
   )
THE STATE OF KANSAS, by its Attorney General STEVE )
   SIX; Consumer Protection/Antitrust Division, Office of the )
   Attorney General, 120 S.W. 10th Street., 2nd Fl., Topeka, )
   Kan. 66612; )
   )
THE STATE OF MAINE, by its Attorney General JANET T. )
   MILLS; Consumer Protection Division, Office of the Attorney )
   General, 6 State House Sta., Augusta, Me. 04333; )
   )
THE STATE OF MICHIGAN, by its Attorney General MIKE )
   COX; Corporate Oversight Division, Department of the )
   Attorney General, G. Mennen Williams Building, 525 W. )
   Ottawa St., Lansing, Mich. 48909; )
   )
THE STATE OF MINNESOTA, by its Attorney General LORI )
   SWANSON; Office of the Attorney General, 1200 Bremer )
   Tower, 445 Minnesota St., St. Paul, Minn. 55101; )
   )
THE STATE OF NEVADA, by its Attorney General )
   CATHERINE CORTEZ MASTO; Bureau of Consumer )
   Protection, 555 E. Washington Ave., Suite 3900, Las Vegas, )
   Nev. 89101; )
   )
THE STATE OF NEW MEXICO, by its Attorney General )
   GARY KING; Office of the Attorney General, Litigation )
   Division(Antitrust), Suite 300, 111 Lomas Blvd, N.W., )
   Albuquerque, N.M. 87102; )
   )
THE STATE OF NEW YORK, by its Attorney General

3

ANDREW M. CUOMO; Antitrust Bureau, Department of
Law, 120 Broadway, New York, N.Y. 10271;

THE STATE OF NORTH CAROLINA, by its Attorney General
ROY COOPER; Consumer Protection Division, Department
of Justice, 9001 Mail Service Center, Raleigh, N.C. 27699;

THE STATE OF NORTH DAKOTA, by its Attorney General
WAYNE STENEHJEM; Consumer Protection and Antitrust
Division, 4205 State St., Bismarck, N.D. 58502;

THE COMMONWEALTH OF PUERTO RICO, by its Secretario
de Justicia Antonio Sagardía; Oficina de Asuntos
Monopolísticos, Departamento de Justicia, Edificio Anexo del
Depto. de Justicia, Piso 2, Calle Olimpo, Esquina Axtmayer,
Parada 11, Núm. 601, Miramar, San Juan, P.R. 00902;

THE STATE OF RHODE ISLAND, by its Attorney General
PATRICK LYNCH; Antitrust Unit, Department of the
Attorney General, 150 South Main St., Providence,
R.I. 02903;

THE STATE OF SOUTH DAKOTA, by its Attorney General
MARTY J. JACKLEY; Office of the Attorney General, 1302
E. Hwy. 14, Suite 1, Pierre S.D. 57501;

THE STATE OF TENNESSEE, by its Attorney General
ROBERT E. COOPER JR.; Antitrust Division, Office of the
Attorney General and Reporter, 425 Fifth Ave. North,
Nashville, Tenn. 37243;

THE STATE OF VERMONT, by its Attorney General
WILLIAM H. SORRELL; Antitrust Unit, Office of the
Attorney General, 109 State St., Montpelier, Vt. 05609;

THE STATE OF WASHINGTON, by its Attorney General ROB
McKENNA; Antitrust Division, Office of the Attorney
General, 800 Fifth Ave., Suite 2000, Seattle, Wash. 98104;

THE STATE OF WEST VIRGINIA, by its Attorney General
DARRELL V. McGRAW, JR.; Antitrust Division, Office of
the Attorney General, 812 Quarrier St., Charleston,
W.Va. 25326; and,

THE STATE OF WISCONSIN, by its Attorney General J.B.
VAN HOLLEN; Criminal Litigation, Antitrust, Consumer
Protection, & Public Integrity Unit, Department of Justice,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Risser Justice Center, 17 W. Main St., Madison, Wis. 53707,    )
                                                                )
As *Parens Patriae*,                                            )
                                                                )
                                                                )
                           Plaintiffs,                          )
                                                                )
                                                                )
         – against –                                            )
                                                                )
AKZO NOBEL INC., 525 W. Van Buren St., Chicago,                 )
     Ill. 60607;                                                )
                                                                )
BIOPRODUCTS INCORPORATED, 320 Springside Dr.,                   )
     Suite 300, Fairlawn, Ohio 44333;                           )
                                                                )
MITSUI & CO., LTD., 2-1 Ohtemachi 1-chome, Chiyoda-ku,          )
     Tokyo 100-0004, Japan;                                     )
                                                                )
MITSUI & CO. (U.S.A.), INC., 200 Park Ave., New York,           )
     N.Y. 10166;                                                )
                                                                )
CHINOOK GLOBAL LIMITED f/k/a CHINOOK GROUP                      )
     LTD., 224 Holt Line West, Sombra, Ontario N0P 2H0,         )
     Canada;                                                    )
                                                                )
CHINOOK GROUP, INC., 41420 Forest Blvd., North Branch,          )
     Minn. 55056;                                               )
                                                                )
EVONIK DEGUSSA GMBH, successor to DEGUSSA AG f/k/a              )
     DEGUSSA-HÜLS AG, Rellinghauser Straße 1-11, 45128          )
     Essen, Germany;                                            )
                                                                )
DEGUSSA CORPORATION f/k/a DEGUSSA-HÜLS                          )
     CORPORATION, 379 Interpace Pkwy., Parsippany,              )
     N.J. 07054;                                                )
                                                                )
LONZA AG, Münchensteinerstrasse 38, CH-4002 Basel,              )
     Switzerland;                                               )
                                                                )
MERCK KGaA, Frankfurter Strasse 250, 64293 Darmstadt,          )
     Germany;                                                   )
                                                                )
E. MERCK OHG, Frankfurter Strasse 250, 64293 Darmstadt,        )
     Germany;                                                   )
                                                                )
EMD CHEMICALS INC. f/k/a EM INDUSTRIES, INC., 480              )
     South Democrat Rd., Gibbstown, N.J. 08027;                )
                                                                )



NEPERA, INC., c/o Cambrex Corporation, One Meadowlands
    Plaza, East Rutherford, N.J. 07073, Attn: General Counsel;

SUMITOMO CHEMICAL AMERICA, INC., 335 Madison
    Ave., Suite 830, New York, N.Y. 10017

SUMITOMO CHEMICAL CO., LTD., Tokyo Sumitomo Twin
    Building (East), 27-1, Shinkawa 2-chome, Chuo-ku, Tokyo
    104-8260, Japan

MITSUBISHI TANABE PHARMA CORPORATION f/k/a
    TANABE SEIYAKU COMPANY, LTD., 2-10, Dosho-machi
    3-chome, Chuo-ku, Osaka 541, Japan;

TANABE U.S.A., INC., 7930 Convoy Ct., San Diego,
    Calif. 92111;

UCB PHARMA, INC., 1950 Lake Park Dr., S.E., Smyrna,
    Ga. 30080;

VERTELLUS SPECIALTIES INC. f/k/a REILLY
    INDUSTRIES, INC., 300 North Meridian St., Suite 1500,
    Indianapolis, Ind. 46204; and,

VERTELLUS CHEMICALS SA f/k/a REILLY CHEMICALS
    SA, Rue de Villerot, 7334 Hautrage, Belgium,

                                Defendants.

        Plaintiffs Philip Richardson, Scott Loughead, Teresa Herminia Giral, Yoon Casa

Lebrato, Inc., Carolyn Garofolo, Hollywood Discount Pharmacy, Inc. d/b/a Hollywood

Discount Pharmacy, Candace Todd, Steve Ridlon, Anthony Bascomb, Community Mills, Inc.,

Big Valley Milling, Inc., Denise DeNardi, Chris Johnson, Michael Henningson, Drug Mart

Pharmacy Corp., William G. Scanlan, Michael Armstrong, Merrill Fowler, Rita Disrud

O'Neill, Kirk Chaffee, Jabo's Pharmacy, Inc., Anile Pharmacy, Inc., Gary E. Archer, Gene

Lloyd as successor in interest to J&R Ventures, Inc., Paul Fowler, and Jay Bass ("Class

Plaintiffs"), through their undersigned attorneys, bring this action on behalf of themselves and

all others similarly situated in the District of Columbia, Arizona, Florida, Kansas, Maine,

Michigan, Minnesota, New Mexico, New York, North Carolina, North Dakota, South Dakota,

Tennessee, West Virginia, and Wisconsin (the "Class Jurisdictions") for damages under the

antitrust, consumer protection, and common laws of the Class Jurisdictions against the above-

named Defendants (the "Defendants").

The States of Arizona, Florida, Hawaii, Idaho, Illinois, Kansas, Maine, Michigan,

Minnesota, Nevada, New Mexico, New York, North Carolina, North Dakota, Rhode Island,

South Dakota, Tennessee, Vermont, Washington, West Virginia and Wisconsin, the District

of Columbia, and the Commonwealth of Puerto Rico, by and through their respective

Attorneys General, bring these actions as *parens patriae*, on behalf of their residents

(hereinafter the "Plaintiff States"). For their Complaint against Defendants, Class Plaintiffs

and Plaintiff States, upon personal knowledge as to their own acts and statuses, and upon

information and belief as to all other matters, allege the following:

## I.    INTRODUCTION

1.    This case arises out of a massive and long-running international conspiracy

among all Defendants and their co-conspirators. The purpose and effect of this conspiracy,

which began no later than 1990 was fixing prices, allocating market share, and committing

other unlawful practices designed to inflate the prices of vitamins, vitamin premixes, bulk

vitamins, and other vitamin products purchased by Plaintiffs and others in the Class

Jurisdictions and the Plaintiff States. The vitamins affected by this conspiracy include:

        (a)    vitamins A, C, E, B1, B2, B5, B6, B9, B12, H, beta carotene,
astaxanthin, and canthaxanthin (hereinafter the "ACE Vitamin
Products");

      (b)     vitamin B3 (niacin and niacinamide); and

      (c)     vitamin B4 (choline chloride).

Collectively, the aforementioned products will be referred to as "Vitamin Products".

    2.     Defendants' conspiracy has involved an astonishing array of illegal conduct by an international cartel that has targeted and burdened consumers in the United States. By artificially raising the price of Vitamin Products to consumers, the conspiracy affected millions of dollars of commerce and the prices of products found in nearly every household in the Class Jurisdictions and the Plaintiff States. The conspiracy was effectuated through a variety of means, including communications among the members of the conspiracy and meetings in which Defendants and their co-conspirators agreed to eliminate competition, fix prices, and allocate markets for Vitamin Products.

    3.     The alleged combination and conspiracy consisted of a continuing agreement and understanding among Defendants and their co-conspirators leading to concerted action among the co-conspirators designed to artificially fix and increase the price of Vitamin Products. The substantial terms of the agreement or understanding among Defendants included agreements:

      (a)     to fix, stabilize, and maintain prices, and to coordinate price increases, for the sale of Vitamin Products in the United States and elsewhere;

      (b)     to allocate among Defendants and their co-conspirators the volume of sales of Vitamin Products in the United States and elsewhere;

      (c)     to allocate among the Defendants and their co-conspirators all or part of certain contracts to supply Vitamin Products to various customers located throughout the United States;

      (d)     to refrain from submitting bids, or to submit collusive, non-competitive, and rigged bids to supply Vitamin Products to various customers located in the United States; and

      (e)    to supply Vitamin Products to various customers located throughout the United States at non-competitive prices.

4.    The acts in furtherance of Defendants' conspiracy included the following wrongful conduct and horizontal agreements:

      (a)    participation in meetings and conversations, in the United States and elsewhere, in which Defendants and their co-conspirators discussed and agreed to prices, volume of sales, and markets for vitamins, vitamin premixes, and Vitamin Products;

      (b)    exchange of sales and customer information for the purpose of monitoring and enforcing adherence to the above-described agreements; and

      (c)    issuance of price announcements and price quotations in accordance with the agreements reached.

5.    Certain Defendants have pled guilty and paid criminal fines to the Antitrust Division of the United States Department of Justice ("DOJ") for participating in this conspiracy to raise and fix prices and allocate market shares for certain vitamins, including vitamins and Vitamin Products sold in the Class Jurisdictions and Plaintiff States.

6.    Defendant Lonza AG has admitted to participating in a price fixing and market allocation conspiracy and has pleaded guilty to violating Section 1 of the Sherman Act for conspiracy to fix prices of Niacin sold in the Class Jurisdictions and Plaintiff States.

7.    Executives who worked for defendant Chinook Group, Inc. have pled guilty to federal criminal charges arising from illegal collusive practices in the vitamin industry.

8.    This action is commenced on behalf of indirect purchasers of the Vitamin Products in each of the Class Jurisdictions, pursuant to the following antitrust and consumer protection laws of the respective jurisdictions:

District of Columbia    D.C. Code § 28-4501, *et seq*.
                                       D.C. Code § 28-3901, *et seq*.

| | |
|---|---|
| <u>Arizona</u> | A.R.S. § 44-1401, *et seq.* |
| <u>Florida</u> | Florida Statutes § 501.204, *et seq.* |
| <u>Kansas</u> | Kan. Stat. Ann. § 50-101, *et seq.*<br>Kan. Stat. Ann. § 50-626(b) |
| <u>Maine</u> | 10 Me. Rev. Stat. Ann. § 1101, *et seq.*<br>5 Me. Rev. Stat. Ann. § 207 |
| <u>Michigan</u> | M.C.L. § 445.771, *et seq.*<br>M.C.L. § 445.901, *et seq.* |
| <u>Minnesota</u> | Minn. Stat. §§ 325D.49 - 325D.66 |
| <u>New Mexico</u> | N.M. Stat. Ann. § 57-1, *et seq.*<br>N.M. Stat. Ann. § 57-12-3 |
| <u>New York</u> | N.Y. Gen. Bus. Law § 340, *et seq.* |
| <u>North Carolina</u> | N.C. Gen. Stat. § 75-1, *et seq.* |
| <u>North Dakota</u> | N.D. Cent. Code § 51-08.1-08<br>N.D. Cent. Code § 51-15-02 |
| <u>South Dakota</u> | S.D. Codified Laws Ann. §§ 37-1-14.3, 37-1-33<br>S.D. Codified Laws Ann. § 37-24-6 |
| <u>Tennessee</u> | Tenn. Code Ann. § 47-25-101, *et seq.*<br>Tenn. Code Ann. § 47-18-104, *et seq.* |
| <u>West Virginia</u> | W. Va. Code § 47-18-1, *et seq.*<br>W. Va. Code § 46A-1-101, *et seq.* |
| <u>Wisconsin</u> | Wis. Stat. § 133.01, *et seq.*<br>Wis. Stat. § 100.18, *et seq.* |

9.     The Plaintiff States bring this action on behalf of their respective residents by and through their Attorneys General under section 4C of the Clayton Act and each state's antitrust and/or consumer protection law, specifically:

<u>District of Columbia</u>   D.C. Code § 28-4501, *et seq.*

| | |
|---|---|
| Arizona | A.R.S. § 44-1401, *et seq.* |
| Florida | Fla. Stat. § 501.201, *et seq.*<br>Fla. Stat. § 542.15, *et seq.* |
| Hawaii | Haw. Rev. Stat. § 480-1, *et seq.* |
| Idaho | Id. Code § 48-101, *et seq.* |
| Illinois | 740 Ill. Comp. Stat. Ann. § 10/1, *et seq.* |
| Kansas | K.S.A. § 50-101, *et seq.*<br>K.S.A. § 50-601, *et seq.* |
| Maine | 10 Me. Rev. Stat. Ann. § 1101, *et seq.*<br>5 Me. Rev. Stat. Ann. § 205-A, *et seq.* |
| Michigan | M.C.L. § 445.771, *et seq.*<br>M.C.L. § 445.901, *et seq.* |
| Minnesota | Minn. Stat. Ch. 8<br>Minn. Stat. §§ 325D.49 – 325D.66 |
| Nevada | Nev. Rev. Stat. § 598A.010, *et seq.* |
| New Mexico | N.M. Stat. Ann. § 57-1-1, *et seq.*<br>N.M. Stat. Ann. § 57-12-1, *et seq.* |
| New York | N.Y. Gen. Bus. Law § 340, *et seq.*, § 349<br>N.Y. Exec. Law § 63(12) |
| North Carolina | N.C. Gen. Stat. § 75-1, *et seq.* |
| North Dakota | N.D. Cent. Code § 51-08.1-01, *et seq.*<br>N.D. Cent. Code § 51-10-06, *et seq.*<br>N.D. Cent. Code § 51-15-01, *et seq.* |
| Puerto Rico | 10 P.R. Laws Ann. §§ 257-276.<br>32 P.R. Laws §§ 3341-3344. |
| Rhode Island | R.I. Gen. Laws § 6-36-1, *et seq.* |
| South Dakota | S.D. Codified Laws § 37-1-3.1, *et seq.*<br>S.D. Codified Laws § 37-24-1, *et seq.* |
| Tennessee | Tenn. Code Ann. § 47-18-101, *et seq.* |

|               | Tenn. Code Ann. § 47-25-101, *et seq.*                                     |
|---------------|----------------------------------------------------------------------------|
| <u>Vermont</u>       | 9 Vt. Stat. Ann. § 2451, *et seq.*                                  |
| <u>Washington</u>    | Rev. Code Wash. Ann. § 19.86.080                                    |
| <u>West Virginia</u> | W. Va. Code § 47-18-1, *et seq.*<br>W. Va. Code § 46A-1-101, *et seq.* |
| <u>Wisconsin</u>     | Wis. Stats. § 133.01, *et seq.*<br>Wis. Stats. § 100.20, *et seq.*  |

10.     This Complaint is also filed under Section 16 of the Clayton Act, 15 U.S.C. § 26 to enjoin Defendants, and their officers, agents, employees or representatives from engaging in the unlawful contract, combination, and conspiracy in restraint of trade or commerce of Vitamin Products.

## II.    JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over the Class Plaintiffs' Clayton Act claims under 28 U.S.C. §§ 1331 and 1337(a).  The Court has jurisdiction over the Class Plaintiffs' state-law claims pursuant to principles of supplemental jurisdiction, 28 U.S.C. § 1367, and under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).  The matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, and a member of the class is a citizen of a state other than the state or country of which a Defendant is a citizen.

12.     This Court has subject matter jurisdiction over the Plaintiff States' Clayton Act claims under 28 U.S.C. §§ 1331 and 1337(a).  The Court has jurisdiction of the Plaintiff States' applicable state law claims pursuant to supplemental jurisdiction under 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction because a substantial part of the conduct and actions alleged herein took place in this judicial district, including injury to Plaintiffs and

Class Members. Personal jurisdiction also comports with due process under the United States Constitution.

14.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to the claims alleged in this action occurred in this District.

### III.    PARTIES

### A.    Plaintiffs

15.    Plaintiff Philip Richardson is a citizen of Arizona. Plaintiff Richardson is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

16.    Plaintiff Scott Loughead is a citizen of Arizona. Plaintiff Loughead is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

17.    Plaintiff Teresa Herminia Giral is a citizen of the District of Columbia. Plaintiff Giral is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

18.    Plaintiff Yoon Casa Lebrato, Inc. is a District of Columbia corporation with its principal place of business in the District of Columbia. Plaintiff Yoon Casa Lebrato, Inc. is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

19.    Plaintiff Carolyn Garofolo is a citizen of Florida. Plaintiff Garofolo is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

20.    Plaintiff Hollywood Discount Pharmacy, Inc. d/b/a Hollywood Discount Pharmacy is a Florida corporation with its principal place of business in Broward County, Florida. Plaintiff Hollywood Discount Pharmacy, Inc. is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

21.    Plaintiff Candace Todd is a citizen of Kansas. Plaintiff Todd is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

22.    Plaintiff Steve Ridlon is a citizen of Maine. Plaintiff Ridlon is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

23.    Plaintiff Anthony Bascomb is a citizen of Michigan. Plaintiff Bascomb is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

24.    Plaintiff Community Mills, Inc. is a Michigan corporation with its principal place of business in Cassopolis, Michigan. Plaintiff Community Mills, Inc. is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

25.    Plaintiff Big Valley Milling, Inc. is a Minnesota corporation with its principal place of business in Montevideo, Minnesota. Plaintiff Big Valley Milling, Inc. is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

26.    Plaintiff Denise DeNardi is a citizen of Minnesota. Plaintiff DeNardi is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

27.    Plaintiff Chris Johnson is a citizen of New Mexico. Plaintiff Johnson is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

28.    Plaintiff Michael Henningson is a citizen of New Mexico. Plaintiff Henningson is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

29.    Plaintiff Drug Mart Pharmacy Corp. is a New York corporation with its principal place of business in Brooklyn, New York. Plaintiff Drug Mart Pharmacy Corp. is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

30.    Plaintiff William G. Scanlan is a citizen of New York. Plaintiff Scanlan is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

31.    Plaintiff Michael Armstrong is a citizen of North Carolina. Plaintiff Armstrong is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

32.    Plaintiff Merrill Fowler is a citizen of North Carolina. Plaintiff Fowler is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

33.    Plaintiff Rita Disrud O'Neill is a citizen of North Dakota. Plaintiff O'Neill is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

34.    Plaintiff Kirk Chaffee is a citizen of South Dakota. Plaintiff Chaffee is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

35.    Plaintiff Jabo's Pharmacy, Inc. a Tennessee corporation with its principal place of business in Newport, Tennessee. Plaintiff Jabo's Pharmacy, Inc. is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

36.    Plaintiff Anile Pharmacy, Inc. is a West Virginia corporation with its principal place of business in Weirton, West Virginia. Plaintiff Anile Pharmacy, Inc. is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

37.    Plaintiff Gary E. Archer is a citizen of West Virginia. Plaintiff Archer is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

38.    Plaintiff Gene Lloyd, a citizen of Wisconsin, is the successor in interest to J&R Ventures, Inc., which was a Wisconsin corporation whose principal place of business was in Prairie du Sac, Wisconsin. At the relevant times, J&R Ventures, Inc. was an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

39.     Plaintiff Paul Fowler is a citizen of Wisconsin. Plaintiff Fowler is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

40.     Plaintiff Jay Bass is a citizen of Wisconsin. Plaintiff Bass is an indirect purchaser of Vitamin Products manufactured by one or more of the Defendants.

41.     The Plaintiff States bring this action by and through their Attorneys General in a statutory, common law, and/or equitable capacity, including but not limited to, as *parens patriae* on behalf and for the benefit of their injured citizens damaged by the conduct alleged herein and on behalf of their states' general economies.

## B.     Defendants

42.     Defendant Merck KGaA's principal place of business is in the Federal Republic of Germany. It is organized under German law as a "*Kommanditgesellschaft auf Aktien*," a type of business organization in which some of the equity interests are owned by partners with unlimited liability, and some shareholders own capital stock without liability. If properly treated as a corporation for purposes of 28 U.S.C. § 1332, Merck KGaA is a citizen of the Federal Republic of Germany. If Merck KGaA is treated as an unincorporated association, it is a citizen of the Federal Republic of Germany either because it is organized under German law and has its principal place of business in Germany, or alternatively because its non-shareholder member is a general partnership whose members are citizens of Germany. Merck KGaA, through its affiliates, is engaged in the distribution and sale, or has affected the distribution and sale of certain ACE Vitamin Products, as more particularly described herein. Merck KGaA is 74% owned by Defendant E. Merck.

43.     Defendant E. Merck OHG ("E. Merck") is a German-law commercial partnership, of the type known as "*offene Handelsgesellschaft*," with its principal place of

16

business in the Federal Republic of Germany. E. Merck is a citizen of the Federal Republic of
Germany for purposes of 28 U.S.C. § 1332(d), either because it is organized under German
law and has its principal place of business in Germany, or, alternatively, because its members
are citizens of Germany. E. Merck was engaged in the distribution and sale, or has affected
the distribution and sale, of certain ACE Vitamin Products.

44.    Defendant EM Industries, Inc. ("EM Industries") is a New York corporation
with its principal place of business in Hawthorne, New York. EM Industries is a wholly-
owned subsidiary of Defendant Merck KGaA. EM Industries is engaged in the distribution
and sale, or has affected the distribution and sale, of certain ACE Products, as more
particularly described herein. EM Industries is wholly controlled and dominated by Merck
KGaA and E. Merck OHG, both in general with regards to the conduct of its business and
specifically with regards to its challenged horizontal conduct alleged herein within the Class
Jurisdictions and Plaintiff States. Defendants Merck KGaA, E. Merck, and EM Industries are
hereinafter referred to as "Merck."

45.    Merck, directly or indirectly and through affiliates which it dominates and
controls, has set prices and allocated markets pursuant to illegal horizontal agreements to fix,
maintain, or stabilize prices of certain ACE Vitamin Products. These horizontal pricing
practices restrained trade or commerce and were designed to and did have a substantial and
adverse effect on the Class Jurisdictions and Plaintiff States.

46.    Defendant Sumitomo Chemical Co. Ltd. ("Sumitomo Ltd.") is a Japanese
corporation with its principal place of business in Japan. Sumitomo Ltd., through its
affiliates, is engaged in the distribution and sale, or has affected the distribution and sale of
certain ACE Vitamin Products, as more particularly described herein.

47.     Sumitomo Chemical America, Inc. ("Sumitomo Inc.") is a New York corporation with its principal place of business in New York, New York. Sumitomo Inc. is a wholly-owned subsidiary of Defendant Sumitomo Ltd. Sumitomo Inc. is engaged in the distribution and sale, or has affected the distribution and sale of certain ACE Vitamin Products, as more particularly described herein. Sumitomo Inc. is wholly controlled and dominated by Sumitomo Ltd. Defendant Sumitomo Ltd. and Sumitomo Inc. are hereinafter referred to as "Sumitomo."

48.     Sumitomo, directly or indirectly and through affiliates which it dominates and controls, has set prices and allocated markets pursuant to illegal horizontal agreements to fix, maintain, or stabilize prices of certain ACE Vitamin Products. These horizontal pricing practices restrained trade or commerce and were designed to and did have a substantial and adverse effect on the Class Jurisdictions and Plaintiff States.

49.     Defendant Mitsubishi Tanabe Pharma Corporation f/k/a Tanabe Seiyaku Company, Ltd. ("Tanabe Ltd.") is a Japanese corporation with its principal place of business in Japan. Tanabe Ltd., through its affiliates, is engaged in the distribution and sale, or has affected the distribution and sale of certain ACE Vitamin Products, as more particularly described herein.

50.     Defendant Tanabe U.S.A., Inc. ("Tanabe Inc.") is a Delaware corporation with its principal place of business in San Diego, California. Tanabe Inc. is a wholly-owned subsidiary of Defendant Tanabe Ltd. Tanabe Inc. is engaged in the distribution and sale, or has affected the distribution and sale of certain ACE Vitamin Products, as more particularly described herein. Tanabe Inc. is wholly controlled and dominated by Tanabe Ltd., both with respect to the general conduct of its business and specifically with respect to its challenged

horizontal conduct within or affecting the District of Columbia and the other Class
Jurisdictions. Defendants Tanabe Ltd. and Tanabe Inc. are hereinafter referred to as
"Tanabe."

51.    Tanabe, directly or indirectly and through affiliates which it dominates and
controls, has set prices and allocated markets pursuant to illegal horizontal agreements to fix,
maintain, or stabilize prices of certain ACE Vitamin Products. These horizontal pricing
practices restrained trade or commerce and were designed to and did have a substantial and
adverse effect on the Class Jurisdictions and Plaintiff States.

52.    Defendant Lonza AG ("Lonza") is a Swiss corporation with its principal place
of business in Switzerland. Lonza AG, through its affiliates, is engaged in the distribution
and sale of certain ACE Vitamin Products and Vitamin B3, as more particularly described
herein.

53.    Lonza, directly or indirectly, and through affiliates that it dominates and
controls, has set prices and allocated markets pursuant to illegal horizontal agreements to fix,
maintain, or stabilize prices of ACE Vitamin Products and Vitamin B3. These horizontal
pricing practices restrained trade or commerce and were designed to and did have a
substantial and adverse effect on the Class Jurisdictions and Plaintiff States.

54.    Defendant Degussa GmbH is the successor to the former Degussa AG f/k/a
Degussa-Hüls AG. Degussa GmbH's principal place of business is in the Federal Republic of
Germany. It is organized under German law as a "*Gesellschaft mit beschränkter Haftung*," a
type of limited liability company. If properly treated as a corporation for purposes of 28
U.S.C. § 1332, Degussa GmbH is a citizen of the Federal Republic of Germany. If Degussa
GmbH is treated as an unincorporated association, it is a citizen of the Federal Republic of

Germany either because it is organized under German law and has its principal place of business in Germany, or alternatively because its members are German corporations whose principal places of business are in Germany.  During all or part of the relevant period, Degussa AG manufactured, sold, and distributed, or affected the distribution and sale of vitamin B3, through its wholly-owned subsidiaries and affiliates, including Defendant Degussa Corporation.

55.      Defendant Degussa Corporation f/k/a Degussa-Hüls Corporation is an Alabama corporation with its principal place of business in Parsippany, New Jersey.  Degussa Corporation is a wholly-owned subsidiary of Degussa GmbH.  During all or part of the relevant period, Degussa Corporation and/or Degussa-Hüls Corporation manufactured, sold, and distributed, or affected the distribution and sale of vitamin B3, as more particularly described herein.  Defendants Degussa GmbH and Degussa Corporation are hereinafter referred to as "Degussa."

56.      Degussa, directly or indirectly and through affiliates which it dominates and controls, has set prices and allocated markets pursuant to illegal horizontal agreements to fix, maintain, or stabilize prices of vitamin B3.  These horizontal pricing practices restrained trade or commerce and were designed to and did have a substantial and adverse effect on the Class Jurisdictions and Plaintiff States.

57.      Defendant Vertellus Specialties Inc. f/k/a Reilly Industries, Inc. ("Reilly Inc.") is an Indiana corporation with its principal place of business in Indianapolis, Indiana.  Reilly Inc. is engaged in the distribution and sale, or has affected the distribution and sale of vitamin B3.

58.     Defendant Vertellus Chemicals SA f/k/a Reilly Chemicals, S.A. ("Reilly

S.A.") is a Belgian corporation with its principal place of business in Belgium. Defendant

Reilly Inc. wholly owns and controls Reilly S.A. Reilly S.A. is engaged in the distribution

and sale, or has affected the distribution and sale of vitamin B3. Defendants Reilly Inc. and

Reilly S.A. are hereinafter referred to as "Reilly."

59.     Reilly, directly or indirectly and through affiliates which it dominates and

controls, has set prices and allocated markets pursuant to illegal horizontal agreements to fix,

maintain, or stabilize prices of vitamin B3. These horizontal pricing practices restrained trade

or commerce and were designed to and did have a substantial and adverse effect on the Class

Jurisdictions and Plaintiff States.

60.     Since 1982, Degussa and Reilly have produced vitamin B3 in Indianapolis,

Indiana through a joint venture named Vitachem.

61.     Defendant Nepera, Inc. ("Nepera") is a New York corporation with its

principal place of business in East Rutherford, New Jersey. Defendant Nepera is engaged in

the distribution and sale, or has affected the distribution and sale of vitamin B3. Nepera,

directly or indirectly and through affiliates which it dominates and controls, has set prices and

allocated markets pursuant to illegal horizontal agreements to fix, maintain, or stabilize prices

of vitamin B3. These horizontal pricing practices restrained trade or commerce and were

designed to and did have a substantial and adverse effect on the Class Jurisdictions and

Plaintiff States, including the District of Columbia.

62.     Defendant Chinook Global Limited f/k/a Chinook Group Ltd. ("Chinook

Global") is a Canadian corporation with its principal place of business in Ontario. Until quite

recently, Chinook Global was engaged in the distribution and sale of choline chloride.

63.     Defendant Chinook Group, Inc. ("Chinook Inc.") is an inactive Minnesota corporation whose principal place of business was in Minnesota. Defendant Chinook Inc. was a wholly-owned subsidiary of Defendant Chinook Global. In conjunction with Chinook Global, Chinook Inc. engaged in the distribution and sale of choline chloride, as more particularly described herein.

64.     Two executives of Chinook Inc. have pleaded guilty to violating Section 1 of the Sherman Act, 15 U.S.C. § 1, by conspiring to fix prices and allocate customers of Vitamin Products in restraint of trade or commerce. Their illegal acts, undertaken in the course and scope of their employment with Chinook Inc. and for its benefit, were designed to and did have a substantial and adverse effect on the Class Jurisdictions and Plaintiff States.

65.     Defendants Chinook Global and Chinook Inc. are hereinafter collectively referred to as "Chinook."

66.     Chinook, directly or indirectly, and through affiliates that it dominates and controls, has set prices and allocated markets pursuant to illegal horizontal agreements to fix, maintain, or stabilize prices of choline chloride. These horizontal pricing practices restrained trade or commerce and were designed to, and did have a substantial and adverse effect on the Class Jurisdictions, the Plaintiff States, and the District of Columbia.

67.     Defendant Bioproducts Incorporated ("Bioproducts") is a Delaware corporation with its principal place of business in Fairlawn, Ohio. Bioproducts is engaged in the distribution and sales of choline chloride, as more particularly described herein. Bioproducts has set prices pursuant to illegal horizontal agreements to fix, maintain, or stabilize prices of choline chloride. These horizontal pricing practices restrained trade or

commerce and were designed to and did have a substantial and adverse effect on the Class Jurisdictions and Plaintiff States.

68.     Defendant Mitsui & Co., Ltd. ("Mitsui Japan") is a Japanese corporation with its principal place of business in Japan, and is engaged in the business of manufacturing, distribution and sale of choline chloride.

69.     Mitsui & Co. U.S.A., Inc. ("Mitsui USA"), is a New York corporation with its principal place of business in New York, New York, and is engaged in the business of distribution and sale of choline chloride. Mitsui USA is wholly owned by Mitsui Japan. Bioproducts is wholly owned by Mitsui USA. Defendants Bioproducts, Mitsui USA and Mitsui Japan are collectively referred to herein as "Mitsui."

70.     Mitsui, directly or indirectly and through affiliates which it dominates and controls, has set prices pursuant to illegal horizontal agreements to fix, maintain, or stabilize prices of choline chloride. These horizontal pricing practices restrained trade or commerce and were designed to and did have a substantial and adverse effect on the Class Jurisdictions and Plaintiff States.

71.     Defendant Akzo Nobel, Inc. ("Akzo") is a Delaware corporation with its principal place of business in Chicago, Illinois. Akzo is engaged in the business of distribution and sale of choline chloride, as more particularly described herein.

72.     Akzo, directly or indirectly and through affiliates which it dominates and controls, has set prices pursuant to illegal horizontal agreements to fix, maintain, or stabilize prices of choline chloride. These horizontal pricing practices restrained trade or commerce and were designed to and did have a substantial and adverse effect on the Class Jurisdictions and Plaintiff States.

23

73.    Defendant UCB Pharma, Inc. ("UCB") is a Delaware corporation with its principal place of business in Smyrna, Georgia, and is engaged in the business of distribution and sale of choline chloride.

74.    UCB, directly or indirectly and through affiliates which it dominates and controls, has set prices pursuant to illegal horizontal agreements to fix, maintain, or stabilize prices of choline chloride. These horizontal pricing practices restrained trade or commerce and were designed to and did have a substantial and adverse effect on the Class Jurisdictions and Plaintiff States.

75.    The Defendants' acts charged in this Complaint were authorized, ordered or done by their officers, agents, employees, or representatives, while actively engaged in the management of Defendants' business or affairs.

## IV.    CLASS ACTION ALLEGATIONS

76.    This action is brought by Class Plaintiffs on behalf of themselves, and pursuant to Fed. R. Civ. P. 23, as representatives of a class of indirect purchasers of Vitamin Products manufactured by Defendants or their co-conspirators ("the Class"). In particular, Plaintiffs assert that a class action is appropriate under Fed. R. Civ. P. 23(b)(3).

77.    The Class is defined as:

> All persons or entities present in the District of Columbia, Arizona, Florida, Kansas, Maine, Michigan, Minnesota, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, and Wisconsin who indirectly purchased Vitamin Products from January 1, 1988 through the present. The Class of indirect purchasers of these products includes consumers and businesses that have purchased Vitamin Products designed for human consumption and/or as an animal nutritional supplement. Excluded from the Class are all governmental entities, Defendants and their subsidiaries and affiliates.

78.     While the exact number of Class members is presently unknown to Plaintiffs, it is believed that due to the nature of the trade and commerce involved, the members of the Class are so numerous and geographically dispersed as to render joinder of all Class members in this action impracticable.

79.     There are questions of law and fact arising in this action that are common to Plaintiffs and the members of the Class, including:

(a)     whether Defendants and their co-conspirators combined, agreed, and conspired among themselves to fix, maintain, or stabilize the prices of, and allocate markets for Vitamin Products;

(b)     the existence and duration of the horizontal agreements alleged in this Complaint to fix, maintain, or stabilize prices of, and allocate markets for Vitamin Products;

(c)     whether each Defendant was a member of, or participant in the contract, combination and/or conspiracy alleged in this Complaint;

(d)     whether Defendants and their co-conspirators took steps to conceal their conspiracy from Plaintiffs and the Class;

(e)     whether, and to what extent, the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiffs, the Plaintiff Class; and, if so, the appropriate measure of damages;

(f)     whether the agents, officers or employees of Defendants and their co-conspirators participated in telephone calls and meetings in furtherance of the conspiracy alleged herein;

(g)     whether the acts and omissions alleged herein constitute an unlawful trust, contract, combination, and/or conspiracy under the laws of the Class Jurisdictions;

(h)     whether the purpose and/or effect of the acts and omissions alleged herein was to fix, raise, maintain, and/or stabilize the prices for Vitamin Products sold or distributed in the Class Jurisdictions;

(i)     whether the unlawful contract, combination and conspiracy alleged herein included the allocation of sales volume among the Defendants; and

(j)     whether the unlawful combination and conspiracy alleged herein involved some or all of the vitamins and/or Vitamin Products described in this Complaint; and if so, which ones.

80.     Plaintiffs' claims are typical of the claims asserted by members of the Class, because among other reasons, Plaintiffs and all Class Members sustained damages arising out of the same wrongful conduct engaged in by the Defendants.

81.     Plaintiffs are adequate class representatives and will fairly and adequately protect the interests of Class members. Plaintiffs have no interests adverse to or in conflict with other members of the Class. Further, Plaintiffs have retained counsel experienced in complex class actions, antitrust, and unfair or deceptive trade practice litigation.

82.     The questions of law and fact common to Plaintiffs and all members of the Class predominate over any questions solely affecting individual members. The legal and factual issues concerning the existence, scope, effects, and composition of the conspiracy alleged herein are (a) central to each Plaintiff's claims, (b) substantially identical with respect to each Plaintiff's burden of demonstrating liability, and (c) the most important and fundamental issues to be determined at trial.

83.     The class action mechanism is superior to other available methods for the fair and efficient adjudication of this controversy. Proceeding as a class action would permit the large number of injured parties to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of evidence and effort. A class action also avoids the potentially inconsistent results that numerous individual trials are likely to generate. Moreover, class treatment allows Plaintiffs with relatively small individual claims to effectively litigate against these large, well-represented corporate Defendants.

Numerous repetitive individual actions would also place an enormous burden on the courts as they are forced to review duplicative evidence and decide the same issues repeatedly.

84.    There are no unusual difficulties likely to be encountered in the management of this case as a class action. Plaintiffs and their counsel are not aware of any reason why this case should not proceed as a class action.

## V.    TRADE AND COMMERCE

85.    Defendants are manufacturers, marketers, and distributors of vitamins, vitamin premixes, and other Vitamin Products for sale to customers in the Class Jurisdictions and Plaintiff States. Defendants are engaged in the sale, marketing, and distribution of vitamins, vitamin premixes, and other Vitamin Products to manufacturers and users of animal feed and nutrition products. The vitamin premixes and other vitamin products manufactured by Defendants are commonly used in the agricultural industry as an ingredient in animal nutrition products and animal feed mixes.

86.    Defendants are also engaged in the sale, marketing, and distribution of Vitamin Products to manufacturers and distributors of vitamin products designed for human consumption. Such vitamin products are purchased and consumed by millions of consumers each year.

87.    The manufacture of vitamins, vitamin premixes and other vitamin products is a multi-billion dollar a year industry worldwide. The North American market for animal nutrition alone is a more than $500 million-a-year industry.

88.    During the period described in this Complaint, Lonza controlled, directly or indirectly, the distribution and sale of ACE Vitamin Products as well as niacin in the Class Jurisdictions and Plaintiff States.

89.    During the period described in this Complaint, Chinook controlled, directly or indirectly, the distribution and sale of choline chloride in the Class Jurisdictions and Plaintiff States.

90.    During the period described in this Complaint, Mitsui controlled, directly or indirectly, the distribution and sale of choline chloride in the Class Jurisdictions and Plaintiff States.

91.    During the period described in this Complaint, AKZO controlled, directly or indirectly, the distribution and sale of choline chloride in the Class Jurisdictions and Plaintiff States.

92.    During the period described in this Complaint, UCB controlled, directly or indirectly, the distribution and sale of choline chloride in the Class Jurisdictions and Plaintiff States.

93.    During the period described in this Complaint, Merck controlled, directly or indirectly, the distribution and sale of ACE Vitamin Products, and specifically vitamins C and H in the Class Jurisdictions and Plaintiff States.

94.    During the period described in this Complaint, Sumitomo controlled, directly or indirectly, the distribution and sale of ACE Vitamin Products, and specifically vitamins B9 and H in the Class Jurisdictions and Plaintiff States.

95.    During the period described in this Complaint, Tanabe controlled, directly or indirectly, the distribution and sale of ACE Vitamin Products, and specifically vitamin H in the Class Jurisdictions and Plaintiff States.

96.    During the period described in this Complaint, Degussa controlled, directly or indirectly, the distribution and sale of niacin in the Class Jurisdictions and Plaintiff States.

97.    During the period described in this Complaint, Reilly controlled, directly or indirectly, the distribution and sale of niacin in the Class Jurisdictions and Plaintiff States.

98.    During the period described in this Complaint, Nepera controlled, directly or indirectly, the distribution and sale of niacin in the Class Jurisdictions and Plaintiff States.

99.    During the period of this Complaint, the conduct of Defendants and their co-conspirators has taken place in and/or affected the trade and commerce in the Class Jurisdictions and Plaintiff States.

## VI.    FACTUAL BACKGROUND

### A.    The ACE Vitamin Products Conspiracy

100.    Beginning no later than 1990, Defendants Lonza, Merck, Sumitomo and Tanabe ("the ACE Defendants") and their co-conspirators entered into and engaged in a combination and conspiracy to fix the price and allocate the markets and sales volumes of ACE Vitamin Products sold to customers in the Class Jurisdictions and elsewhere. The combination and conspiracy, engaged in by the ACE Defendants and their co-conspirators, was anticompetitive, an unlawful trade practice, and/or an unfair or deceptive act or practice in violation of the laws of the United States, Class Jurisdictions, and Plaintiff States.

29

101.    The combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the conspirators, the substantial terms of which were:

    (a)    to fix, stabilize, and maintain prices and/or to coordinate price increases for the sale of ACE Vitamin Products in the Class Jurisdictions and elsewhere;

    (b)    to allocate the volumes of sales of, and markets for, ACE Vitamin Products among the corporate conspirators in the Class Jurisdictions and elsewhere; and

    (c)    to control the markets for vitamin premixes, for example, by agreeing to price premixes at levels in excess of the prices offered for the component vitamin ingredients.

102.    For purposes of forming and carrying out the charged combination and conspiracy, the ACE Defendants and their co-conspirators, including executives from both United States and European affiliates of Defendants, participated in covert meetings and conversations in which they determined the prices, volume of sales, and markets for vitamins, vitamin premixes, and other Vitamin Products.  Further, for purposes of carrying out the charged combination and conspiracy, these Defendants and their co-conspirators coordinated price quotations and published price announcements in accordance with the agreements reached.

103.    In the above described meetings, the Defendants and their co-conspirators

    (a)    discussed prices and volumes of vitamins and vitamin premixes;

    (b)    agreed to increase and maintain those prices;

    (c)    agreed to allocate markets for premixes and vitamin ingredients for such premixes; and

    (d)    discussed methods to conceal the agreements.

104.    For purposes of forming and carrying out the charged combination and conspiracy, the ACE Defendants and their co-conspirators, including executives from both United States and European affiliates of Defendants, participated in meetings and conversations in which they agreed to allocate among the corporate conspirators the volumes of sales of, and markets for, ACE Vitamin Products to be sold by each corporate conspirator in the United States and elsewhere. The conspiracy divided and allocated such markets by region and by vitamin, and was implemented by these Defendants and their co-conspirators' executives and United States marketing managers acting under instructions from European executives.

105.    The ACE Defendants issued price announcements in accordance with the agreements and participated in meetings and conversations to monitor and enforce adherence to the agreed-upon prices and sales volumes.

106.    For purposes of carrying out the charged combination and conspiracy, the ACE Defendants and their co-conspirators rigged bids for contracts to supply ACE Vitamin Products.

107.    For purposes of forming and carrying out the charged combination and conspiracy as well as enforcing adherence to the agreed-upon prices, sales volumes and market allocations, the ACE Defendants and their co-conspirators exchanged information on the volumes of sales of ACE Vitamin Products and chemicals necessary for the production of ACE Vitamin Products in the United States and elsewhere.

108.    The acts committed by the ACE Defendants as alleged herein violated the antitrust statutes and consumer protection statutes of the Class Jurisdictions and Plaintiff States. Specifically, these Defendants illegally:

31

(a)     created or carried out restrictions in trade or commerce by, e.g., setting, by agreement, the prices which these Defendants charged for ACE Vitamin Products sold in the Class Jurisdictions and Plaintiff States;

(b)     limited or reduced the production of ACE Vitamin Products sold in the Class Jurisdictions and Plaintiff States, by, e.g., allocating sales volumes among Defendants pursuant to an agreement as alleged herein;

(c)     prevented competition in the manufacture or sale of ACE Vitamin Products sold in the Class Jurisdictions and Plaintiff States, by, e.g., agreeing among themselves not to compete over sales volumes and prices;

(d)     fixed the price of ACE Vitamin Products in such a way as to control or establish, at least in part, the prices paid by consumers and the public; and

(e)     entered into, executed, and carried out contracts, obligations, and agreements concerning Vitamin Products sold in the Class Jurisdictions and Plaintiff States in which they:  (i) bound themselves not to sell ACE Vitamin Products below a fixed price; (ii) agreed to keep the prices of ACE Vitamin Products at a fixed price; and (iii) established and settled the price of ACE Vitamin Products so as to directly or indirectly preclude a free and unrestricted competition among themselves.

109.    Each of the above acts constitutes an unlawful trade practice or deceptive act or practice under the laws of the Class Jurisdictions and Plaintiff States.

110.    Plaintiffs and the Class were injured in their trade or business by reason of the unlawful acts of the ACE Defendants as alleged herein.  For example, Plaintiffs and the Class were forced to pay higher prices for ACE Vitamin Products than they would have had to pay if the prices charged by Defendants to their customers were the product of fair and open competition, and not of an illegal price-fixing agreement.  As persons suffering losses as a result of Defendants' unlawful conduct, Plaintiffs and the Class are entitled to recover the actual damages sustained by them, interest on their actual damages, permanent injunctive relief, attorney's fees, and costs of suit.

B.     **The Vitamin B3 Conspiracy**

111.    Beginning no later than 1988, Defendants Lonza, Degussa, Reilly and Nepera (the "Niacin Defendants") and their co-conspirators entered into and engaged in a combination and conspiracy to fix the price and allocate the markets and sales volumes of vitamin B3 sold to customers in the United States and elsewhere. The combination and conspiracy engaged in by the Niacin Defendants and their co-conspirators was anticompetitive, an unlawful trade practice, and/or an unfair or deceptive act or practice in violation of the laws of the United States, Class Jurisdictions, and Plaintiff States.

112.    The combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Niacin Defendants and their co-conspirators, the substantial terms of which were:

    (a)    to fix and maintain prices and/or to coordinate price increases for the sale of vitamin B3 in the United States, including the Class Jurisdictions, Plaintiff States, and elsewhere; and

    (b)    to allocate the volumes of sales of, and markets for, vitamin B3 among the corporate conspirators in the United States, including the Class Jurisdictions, Plaintiff States, and elsewhere.

113.    For purposes of forming and carrying out the charged combination and conspiracy, the Niacin Defendants and their co-conspirators, including executives from both United States and foreign affiliates of these Defendants, participated in covert meetings and conversations in which the prices, volume of sales, and markets for vitamin B3 were discussed and agreed. Further, for purposes of carrying out the charged combination and conspiracy, the Niacin Defendants and their co-conspirators issued price announcements in publications and coordinated price quotations to customers in accordance with the agreements reached.

114.    At the above-described meetings and during the period of the conspiracy, the

Niacin Defendants and their co-conspirators agreed to and did eliminate, suppress, and limit

competition in violation of the laws of each of the Class Jurisdictions and Plaintiff States, by:

    (a)    discussing the prices and volumes of vitamin B3;

    (b)    agreeing to increase and maintain prices for vitamin B3;

    (c)    agreeing to allocate markets for vitamin B3; and

    (d)    discussing and agreeing on methods to conceal their agreements and
           concerted conduct.

115.    For purposes of carrying out the charged combination and conspiracy, the

Niacin Defendants and their co-conspirators rigged bids for contracts to supply vitamin B3.

## C.    The Vitamin B4 Conspiracy

116.    Beginning no later than 1988, Defendants Chinook, Mitsui, AKZO and UCB

(the "Choline Chloride Defendants") and their co-conspirators entered into and engaged in a

combination and conspiracy to fix the price and allocate the markets and sales volumes of

vitamin B4 sold to customers throughout the United States and elsewhere.  The combination

and conspiracy engaged in by the Choline Chloride Defendants and their co-conspirators was

anticompetitive, an unlawful trade practice, and/or an unfair or deceptive act or practice in

violation of the laws of the United States, and each of the Class Jurisdictions, and Plaintiff

States.

117.    The combination and conspiracy consisted of a continuing agreement,

understanding, and concert of action among the Choline Chloride Defendants and their co-

conspirators, the substantial terms of which were:

(a)    to fix and maintain prices and/or to coordinate price increases for the sale of vitamin B4 throughout the United States, including the Class Jurisdictions, Plaintiff States, and elsewhere;

(b)    to allocate the volumes of sales of, and markets for, vitamin B4 among the corporate conspirators throughout the United States, including the Class Jurisdictions, Plaintiff States, and elsewhere; and

(c)    that certain foreign Defendants would refrain from selling vitamin B4 in the United States.

118.    For purposes of forming and carrying out the charged combination and conspiracy, the Choline Chloride Defendants and their co-conspirators participated in covert meetings and conversations in which the prices, volume of sales, and markets for choline chloride were discussed and agreed upon. The Choline Chloride Defendants and their co-conspirators issued price announcements in publications and coordinated price quotations to customers in accordance with the agreements reached as a means of furthering the charged combination and conspiracy.

119.    Meetings among the Choline Chloride Defendants and their co-conspirators in furtherance of the conspiracy occurred, *inter alia*, on the following dates in the following cities:

(a)    January 1988 in Toronto;

(b)    Fall 1988 in Delaware;

(c)    Fall 1992 in Mexico City;

(d)    Fall 1992 in Germany;

(e)    January 1993 in Toronto;

(f)    Spring 1993 in Amsterdam;

(g)    Fall 1993 in Belgium;

(h)    Spring 1994 in Malaysia;

      (i)     December 1995 in St. Louis;

      (j)     May 1996 in St. Louis; and

      (k)     January 1998 in Atlanta.

120.    At the above-described meetings and during the period of the conspiracy, the Choline Chloride Defendants and others agreed to and did eliminate, suppress, and limit competition, in violation of the laws of the Class Jurisdictions and Plaintiff States, by:

      (a)     discussing the prices and volumes of vitamin B4;

      (b)     agreeing to increase and maintain prices for vitamin B4;

      (c)     agreeing to allocate markets for vitamin B4, including agreeing that each Defendant or co-conspirator would refrain from making sales in the other's so-allocated geographical market(s); and

      (d)     discussing and agreeing on methods to conceal their illegal agreements and concerted conduct.

121.    For purposes of forming and carrying out the charged combination and conspiracy, the Choline Chloride Defendants and their co-conspirators, including agents, officers, employees, and representatives of these Defendants, participated in meetings and conversations in which it was agreed to allocate among the conspirators the volumes of sales of, and markets for, vitamin B4 to be sold by each conspirator throughout the United States and elsewhere. The conspiracy divided and allocated such markets by region and the agreements or understandings reached by the co-conspirators were implemented by the Choline Chloride Defendants' executives and/or employees, their co-conspirators' executives and/or employees, and their respective United States marketing managers.

122.    The Choline Chloride Defendants issued price announcements in accordance with the agreements and participated in meetings and conversations to monitor and enforce adherence to the agreed-upon prices and sales volumes.

36

123.    For purposes of carrying out the charged combination and conspiracy, the Choline Chloride Defendants and their co-conspirators rigged bids for contracts to supply vitamin B4.

124.    For purposes of forming and carrying out the charged combination and conspiracy, the Choline Chloride Defendants and their co-conspirators exchanged information on the volumes of sales of vitamin B4 throughout the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon prices, sales volumes, and market allocations.

D.    **The Impermissible Effect On Relevant Markets**

125.    Prior to the late 1980's, the markets for vitamins and vitamin premixes were characterized by low prices and competition. Since then, the markets for Vitamin Products sold by Defendants have been characterized by stability and steady price increases. Due to Defendants' price fixing and market allocation activity, steady price increases have taken place in these product markets despite fluctuations in the costs of production. As a result of Defendants' conduct, prices have been maintained at all-time high levels since its inception.

126.    For many years, prices for Vitamin Products have not followed the laws of supply and demand governing competitive markets. Price reductions, for example, have not followed increases in supply. Due to Defendants' price fixing, market allocation, and other anti-competitive conduct, prices increased even as additional supplies of Vitamin Products came on the market.

127.    The foregoing conduct has continued for some time. Executives of the Defendants continue to discuss price fixing and market allocation, both by telephone and in

person. The purpose of these communications has been to anticompetitively manage the markets for Vitamin Products.

128. During the period covered by this Complaint, Class Plaintiffs and members of the class indirectly purchased Vitamin Products manufactured by Defendants. By reason of the violations of law as alleged herein, Class Plaintiffs and the class paid more for these products and substitute products than they would have paid in the absence of the illegal combination and conspiracy and, as a result, they have been injured in their business and property and have suffered damages in an amount presently undetermined.

129. Further, residents of the Plaintiff States indirectly purchased Vitamin Products, manufactured by Defendants, paying more for these products than they would have paid in the absence of the illegal combination and conspiracy.

### E. Fraudulent Concealment

130. Plaintiffs, members of the Class and the Plaintiff States did not discover, and could not discover through the exercise of reasonable diligence, the existence of the claims sued upon until recently because Defendants and their co-conspirators actively, intentionally, and fraudulently concealed the existence of the combination and conspiracy from Plaintiffs by one or more of the following affirmative acts, including acts in furtherance of the conspiracy:

(a) Holding covert meetings in the Black Forest in Germany and elsewhere in which the prices, volumes of sale and markets for Vitamin Products were discussed and agreed;

(b) Secretly allocating among themselves either customers or contracts for the sale of vitamin premixes and Vitamin Products as compensation for losing customers or markets;

(c) Intentionally submitting inflated bids for customer business to make other bids appear legitimate;

38

(d)   Coordinating bidding in a manner that gave the appearance of a competitive process when such bids were the result of collusion;

(e)   Silencing witnesses with knowledge of the existence of the conspiracy by offering them improper payments;

(f)   Instructing members of the conspiracy at the above described meetings not to divulge the existence of the conspiracy to non-participants;

(g)   Confining the anticompetitive, unlawful plan to a small number of people and key officials at each Defendant to maintain the secrecy of their illegal acts;

(h)   Covertly conducting conspiracy telephone calls and meetings in hotels and other places in the United States and Europe; and

(i)   Avoiding either references in documents or the creation of documents otherwise created in the ordinary course of Defendants' businesses regarding conduct that would constitute an antitrust violation or anticompetitive act.

## VII.   FIRST CAUSE OF ACTION

### (Violations of the District of Columbia Antitrust Act and the Antitrust Laws of the other Class Jurisdictions)

131.   Class Plaintiffs hereby adopt and incorporate by this reference each of the preceding paragraphs as if fully set forth herein.

132.   The acts committed by Defendants as alleged herein constitute an unlawful contract, combination, or conspiracy under the District of Columbia Antitrust Act, D.C. Code § 28-4501, *et seq*. and under the antitrust statutes of the following Class Jurisdictions:

| | |
|---|---|
| Arizona | A.R.S. § 44-1401, *et seq*. |
| Kansas | Kan. Stat. Ann. § 50-101, *et seq*. |
| Maine | 10 Me. Rev. Stat. Ann. § 1101, *et seq*. |
| Michigan | M.C.L. § 445.771, *et seq*. |

| Minnesota | Minn. Stat. §§ 325D.51 and 325D.53 |
| New Mexico | N.M. Stat. Ann. § 57-1-1, *et seq.* |
| New York | N.Y. Gen. Bus. Law § 340, *et seq.* |
| North Carolina | N.C. Gen. Stat. § 75-1, *et seq.* |
| North Dakota | N.D. Cent. Code § 51-08.1-08 |
| South Dakota | S.D. Codified Laws Ann. §§ 37-1-14.3, 37-1-3.1 |
| Tennessee | Tenn. Code Ann. § 47-25-101, *et seq.* |
| West Virginia | W. Va. Code § 47-18-1, *et seq.* |
| Wisconsin | Wis. Stat. § 133.01, *et seq.* |

133.    With respect to purchases of Vitamin Products in the District of Columbia, Defendants' conduct alleged herein violates D.C. Code § 28-4501 *et seq.* As a result of this violation, Class members who indirectly purchased Defendants' Vitamin Products in the District of Columbia during the Class Period were injured in their business and property in an amount presently undetermined. With respect to indirect purchases of Defendants' Vitamin Products in Arizona, Kansas, Maine, Michigan, Minnesota, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia and Wisconsin, Defendants' conduct as alleged herein violated the applicable antitrust statute. As a result, Class members who indirectly purchased Vitamin Products in those states during the Class Period were injured in their business and property in an amount presently undetermined.

134.    Pursuant to D.C. Code § 28-4508, *et seq.*, and, where applicable, pursuant to the antitrust statutes of the other Class Jurisdictions, Class Plaintiffs demand treble damages and restitution from the Defendants of all monies illegally acquired by them as a result of the unlawful conduct alleged herein as provided by law in each of the Class Jurisdictions.

40

135.   In New York, Plaintiffs demand only actual damages and hereby expressly waive all damages in excess thereof including treble damages that may have been available pursuant to N.Y. Gen. Bus. Law § 340, *et seq.*

## VIII.   SECOND CAUSE OF ACTION

### (Violation of the District of Columbia Consumer Protection Act and consumer protection statutes of the other Class Jurisdictions)

136.   Class Plaintiffs hereby adopt and incorporate by this reference each of the preceding paragraphs as if fully set forth herein.

137.   The acts committed by Defendants as alleged herein constitute unfair, unconscionable, deceptive, and/or fraudulent acts or practices in violation of the District of Columbia Consumer Protection Act, D.C. Code § 28-3901, *et seq.* and the consumer protection and/or unfair and deceptive competition laws of the following Class Jurisdictions:

| | |
|---|---|
| Florida | Florida Statutes § 501.204, *et seq.* |
| Kansas | Kan. Stat. Ann. § 50-626(b) |
| Maine | 5 Me. Rev. Stat. Ann. § 205-A, *et seq.* |
| Michigan | M.C.L. § 445.901, *et seq.* |
| New Mexico | N.M. Stat. Ann. § 57-12-3 |
| New York | N.Y. Gen. Bus. Law § 349, *et seq.* |
| North Dakota | N.D. Cent. Code § 51-15-02 |
| South Dakota | S.D. Codified Laws Ann. § 37-24-6 |
| Tennessee | Tenn. Code Ann. § 47-18-101, *et seq.* |
| West Virginia | W. Va. Code § 46A-1-101, *et seq.* |
| Wisconsin | Wis. Stat. § 100.18, *et seq.* |

138.  By reason of Defendants' unlawful trade practices in the District of Columbia and Defendants' violations of the consumer protection acts of Florida, Kansas, Maine, Michigan, New Mexico, New York, North Dakota, South Dakota, Tennessee, West Virginia and Wisconsin, Plaintiffs and other members of the Class who indirectly purchased Vitamin Products in these states have been injured because, among other reasons, they have paid more for Vitamin Products than they would have paid in the absence of the Defendants' unlawful trade practices.

139.  Consumers in the District of Columbia and in Florida, Kansas, Maine, Michigan, New Mexico, New York, North Dakota, South Dakota, Tennessee, West Virginia and Wisconsin have been and will continue to be injured in their business and property by Defendants' unfair and deceptive trade practices.

140.  Pursuant to D.C. Code § 28-3905 and, where applicable, pursuant to the consumer protection statutes of the other Class Jurisdictions except in New York, Class Plaintiffs demand treble damages and restitution from the Defendants of all monies illegally acquired by them as a result of the unlawful conduct alleged herein.

141.  In New York, Plaintiffs demand only actual damages and hereby expressly waive all damages in excess thereof including treble damages that may have been available pursuant to N.Y. Gen. Bus. Law § 349(h).

## IX.   THIRD CAUSE OF ACTION

### (*Parens Patriae* Claims)

142.  The Plaintiff States repeat and reallege the allegations in paragraphs 1-134 as if fully set forth herein.

143.    Residents of the Plaintiff States were injured by Defendants' wrongful acts in that they indirectly purchased Vitamin Products at anticompetitive prices by reason of Defendants' wrongful acts.

144.    The Plaintiff States are authorized to sue on behalf of their residents and in their sovereign capacity under their applicable state law in which the allegations herein are in violation, specifically:

| | |
|---|---|
| Arizona | A.R.S. § 44-401, *et seq.* |
| District of Columbia | D.C. Code § 28-4501, *et seq.* |
| Florida | Fla. Stat. § 501.201, *et seq.*<br>Fla. Stat. § 542.15, *et seq.* |
| Hawaii | Haw. Rev. Stat. § 480-1, *et seq.* |
| Idaho | Id. Code § 48-101, *et seq.* |
| Illinois | 740 Ill. Comp. Stat. Ann. § 10/1, *et seq.* |
| Kansas | K.S.A. § 50-101, *et seq.*<br>K.S.A. § 50-601, *et seq.* |
| Maine | 10 Me. Rev. Stat. Ann. § 1101, *et seq.*<br>5 Me. Rev. Stat. Ann. § 205-A, *et seq.* |
| Michigan | M.C.L. § 445.771, *et seq.*<br>M.C.L. § 445.901, *et seq.* |
| Minnesota | Minn. Stat. Ch. 8<br>Minn. Stat. §§ 325D.49 – 325D.66 |
| Nevada | Nev. Rev. Stat. § 598A.010, *et seq.* |
| New Mexico | N.M. Stat. Ann. § 57-1-1, *et seq.*<br>N.M. Stat. Ann. § 57-12-1, *et seq.* |
| New York | N.Y. Gen. Bus. Law § 340, *et seq.*, § 349<br>N.Y. Exec. Law § 63(12) |
| North Carolina | N.C. Gen. Stat. § 75-1, *et seq.* |

| | |
|---|---|
| North Dakota | N.D. Cent. Code § 51-08.1-01, *et seq.* |
| | N.D. Cent. Code § 51-10-06, *et seq.* |
| | N.D. Cent. Code § 51-15-01, *et seq.* |
| Puerto Rico | 10 P.R. Laws Ann. §§ 251-276 |
| | 32 P.R. Laws §§ 3341-3344 |
| Rhode Island | R.I. Gen. Laws § 6-36-1, *et seq.* |
| South Dakota | S.D. Codified Laws § 37-1-3.1, *et seq.* |
| | S.D. Codified Laws § 37-24-1, *et seq.* |
| Tennessee | Tenn. Code Ann. § 47-18-101, *et seq.* |
| | Tenn. Code Ann. § 47-25-101, *et seq.* |
| Vermont | 9 Vt. Stat. Ann. § 2451, *et seq.* |
| Washington | Rev. Code Wash. Ann. § 19.86.080 |
| West Virginia | W. Va. Code § 47-18-1, *et seq.* |
| | W. Va. Code § 46A-1-101, *et seq.* |
| Wisconsin | Wis. Stats. § 133.01, *et seq.* |
| | Wis. Stats. § 100.20, *et seq.* |

145. The Plaintiff States hereby demand: (i) actual damages, (ii) up to three times the actual damages where applicable, (iii) restitution, and (iv) civil penalties where applicable.

## X. FOURTH CAUSE OF ACTION

### (Injunctive Relief)

146. All Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

147. Defendants' conduct in restraint of trade began in 1990 with the intent and effect of maintaining artificially high and anticompetitive prices of Vitamin Products. Plaintiffs have been, and continue to be, injured in their business and property in that they

44

have paid, and continue to pay, higher prices for Vitamin Products than they would have absent Defendants' actions.

148.    Pursuant to §§ 4 and 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiffs demand Defendants be preliminarily and permanently enjoined from continuing the unlawful combination or conspiracy as alleged herein.

## XI.    FIFTH CAUSE OF ACTION

### (Unjust Enrichment)

149.    All Plaintiffs repeat and reallege each of the foregoing allegations as if fully set forth herein.

150.    Defendants have benefited from their illegal restraints of trade and acts, which lessen or tend to lessen competition through the overpayment by Class Plaintiffs, the Class, and residents of the Plaintiff States for products containing Defendants' Vitamin Products.

151.    It would be inequitable for the Defendants to be permitted to retain any of these overpayments for Defendants' Vitamin Products derived from their unfair or deceptive trade practices.

152.    Plaintiffs demand that Defendants disgorge all such monies acquired through Defendants' illegal and inequitable conduct.

## XII.    JURY DEMAND

153.    Plaintiffs demand trial by jury on all claims for which they are entitled to a jury trial.

## XIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against all Defendants, jointly and severally, as follows:

a.    certifying this action to proceed as a class action pursuant to Fed. R. Civ. P. 23, and direct that reasonable notice be given to members of the Class;

b.    declaring that the violations alleged herein constitute an unlawful contract, combination, and conspiracy in restraint of trade or commerce, in violation of the District of Columbia Antitrust Act, D.C. Code § 28-4501, *et seq.*, and the antitrust laws of the other Class Jurisdictions, and that the Court award Plaintiffs and the Class (i) actual damages in an amount to be proved at trial as a result of the wrongful conduct alleged, plus interest and costs; (ii) treble damages pursuant to D.C. Code §§ 28-4508 and, where appropriate, the antitrust laws of the other Class Jurisdictions except in New York where treble damages are expressly waived; and (iii) all other damages available under the antitrust statutes of the other Class Jurisdictions;

c.    declaring that the concerted violations alleged herein constitute unlawful trade practices in violation of the District of Columbia Consumer Protection Act, D.C. Code § 28-3901, *et seq.* and constitute deceptive or unlawful trade practices in violation of the consumer protection statutes of the other Class Jurisdictions, and that the Court award Plaintiffs and the Class (i) actual damages in an amount to be proved at trial as a result of the wrongful conduct alleged, plus interest and costs; (ii) treble damages pursuant to D.C. Code §§ 28-3905 and, where appropriate, the consumer protection statutes of the other Class Jurisdictions except in New York where such treble damages are expressly waived; and (iii) all other damages available under the consumer protection statutes of the other Class Jurisdictions;

d.    declaring the unlawful combination and conspiracy alleged in this Complaint to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §26, and preliminarily and permanently enjoined from continuing the unlawful combination or conspiracy as alleged herein;

e.    declaring that the concerted violations alleged herein violated applicable state law in the Plaintiff States and awarding the Plaintiff States damages (trebled where applicable), civil penalties, and restitution;

f.    declaring that the violations alleged herein resulted in the unjust enrichment of Defendants, and that such Defendants be required to disgorge to Plaintiffs, the Class and the Plaintiff States all amounts by which they have been unjustly enriched, plus interest and costs;

g.    granting Plaintiffs and the Class the costs of prosecuting this action together with interest and reasonable attorney's fees;

h.   entering joint and several judgments in favor of Plaintiffs and the Class against the Defendants, and each of them in accordance with paragraphs a-e above; and

i.   granting such other, further and general relief as this Court may deem just and proper.

DATED:   November _9_, 2009

Respectfully submitted,

Timothy D. Battin (D.C. Bar 436303)
*tbattin@straus-boies.com*

David Boies III
*dboies@straus-boies.com*
Ian Otto
*iotto@straus-boies.com*
Joshua D. Raynes
*jraynes@straus-boies.com*
STRAUS & BOIES, LLP
Fifth Floor
4041 University Dr.
Fairfax, Va. 22030
(703) 764-8700

*ON BEHALF OF CLASS PLAINTIFFS*
*AND CLASS COUNSEL*


PETER J. NICKLES
Attorney General of the District of Columbia

TERRY GODDARD
Attorney General of the State of Arizona

BILL McCOLLUM
Attorney General of the State of Florida

MARK J. BENNETT
Attorney General of the State of Hawaii

LAWRENCE G. WASDEN
Attorney General of the State of Idaho

LISA MADIGAN
Attorney General of the State of Illinois

STEVE SIX
Attorney General of the State of Kansas

JANET T. MILLS
Attorney General of the State of Maine

MICHAEL A. COX
Attorney General of the State of Michigan

LORI SWANSON
Attorney General of the State of Minnesota

CATHERINE CORTEZ MASTO
Attorney General of the State of Nevada

GARY KING
Attorney General of the State of New Mexico

ANDREW M. CUOMO
Attorney General of the State of New York

ROY COOPER
Attorney General of the State of North Carolina

WAYNE STENEHJEM
Attorney General of the State of North Dakota

ANTONIO SAGARDÍA
Secretary of Justice of the Commonwealth
    of Puerto Rico

PATRICK C. LYNCH
Attorney General of the State of Rhode Island

MARTY J. JACKLEY
Attorney General of the State of South Dakota

ROBERT E. COOPER, JR.
Attorney General and Reporter of the State
    of Tennessee

WILLIAM H. SORRELL
Attorney General of the State of Vermont

ROBERT M. McKENNA
Attorney General of the State of Washington

DARRELL V. McGRAW, JR.
Attorney General of the State of West Virginia

J.B. VAN HOLLEN
Attorney General of the State of Wisconsin

*ON BEHALF OF THE PLAINTIFF STATES*


Andrew S. Friedman
Francis J. Balint, Jr.
BONNETT, FAIRBOURN, FRIEDMAN
    & BALINT, P.C.
4041 N. Central Ave., Suite 1100
Phoenix, Ariz. 85012
(602) 274-1100

Jeffrey A. Bartos
GUERRIERI, EDMOND, CLAYMAN
    & BARTOS, P.C.
1625 Massachusetts Ave., N. W., Suite 700
Washington, D.C. 20036
(202) 624-7400

James Fox Miller
BOIES, SCHILLER & FLEXNER LLP
2435 Hollywood Blvd.
Hollywood, Fla. 33020
(954) 962-2000

James E. Kelley, Jr.
Robert W. Tormohlen
LEWIS, RICE & FINGERSH, L.C.
One Petticoat Lane
1010 Walnut St., Suite 500
Kansas City, Mo. 64106
(816) 421-2500

William Robitzek
BERMAN & SIMMONS, PA
129 Lisbon St., P.O. Box 961
Lewiston, Me. 04243-0961
(207) 784 3576

Andrew Nickelhoff
SACHS WALDMAN, PC
1000 Farmer St.
Detroit, Mich. 48226
(313) 965-3464

Mark Wermerskirchen
WERMERSKIRCHEN LAW OFFICE, PA
P.O. Box 1002
Willmar, Minn. 56201
(320) 235-7615

Michael W. Unger
UNGER LAW OFFICE
90 S. 7th Street, Suite 4700
Minneapolis, Minn. 55402
(612) 336-7730

David Freedman
FREEDMAN, BOYD, HOLLANDER,
    GOLDBERG & IVES, P.A.
20 First Plaza, Suite 700
Albuquerque, N.M. 87102
(505) 842-9960

Nicholas A. Gravante, Jr.
BOIES, SCHILLER & FLEXNER LLP
1585 Broadway, 19th Fl.
New York, N.Y. 10036
(212) 446-2300

James Linnan
LINNAN & FALLON, LLP
61 Columbia St., Suite 300
Albany, N.Y. 12210
(518) 449-5400

James Wyatt
WYATT & BLAKE, L.L.P.
435 E. Morehead St.
Charlotte, N.C.  28202
(704) 331-0767

Orell D. Schmitz
422 West Blvd. Ave.
Bismarck, N.D.  58501
(701) 250-4500

Michael Strain
THE MORMAN LAW FIRM
850 Main St., P.O. Box 729
Sturgis, S.D. 57785
(605) 347 3624

Gordon Ball
BALL & SCOTT LAW OFFICES
550 W. Main St., Suite 601
Knoxville, Tenn. 37902
(865) 525-7028

Michael Simon
FRANKOVITCH, ANETAKIS, COLANTONIO
    & SIMON
337 Penco Rd.
Weirton, W. Va.  26062
(304) 723-5892

JAMES HAVILAND
1827 Lauden Heights Rd.
Charleston, W. Va. 25314
(304) 346-5315

Susan LaCava
SUSAN LaCAVA SC
23 N. Pickney St., Suite 300
Madison, Wis. 53703
(608) 258-1335

Campion E. Kerston
KERSTON & MCKINNON, SC
11518 North Port Washington Rd.
Suite 104
Mequon, Wis. 53092
(262) 241-0054

Bernard Persky
Hollis Salzman
LABATON SUCHAROW LLP
140 Broadway
New York, N.Y.  10005
(212) 907-0700


*CLASS COUNSEL*